JOHN FERMAN *vs.* LOMBARD INVESTMENT CO.

Submitted on briefs Dec. 14, 1893.   Affirmed Jan. 12, 1894.

No. 8366.

**Contract construed.**

A contract between mortgagor and mortgagee construed, and *held* to put the mortgagee in possession of the mortgaged premises, so that the latter became "mortgagee in possession," and so that it might, after notice, be liable as the continuer of a nuisance on the premises created by the mortgagor.

**Evidence sufficient to determine the damages.**

*Held,* that the evidence in the case furnished means for the jury to determine the amount of damage accruing from a nuisance after notice to the continuer.

Appeal by defendant the Lombard Investment Company, from an order of the District Court of Hennepin County, *Thomas Canty, J.,* made June 27, 1893, refusing its application for a new trial.

The plaintiff, John Ferman, owned the brick building, No. 320 Cedar Avenue, Minneapolis, and carried on a bakery there. It was twenty two feet wide by seventy five feet deep and three stories high. The defendant had the control and management of the adjacent building, Nos. 322 and 324, two stories high and six inches away from the wall of plaintiff's building. The complaint charged, that from February 27, 1892, to the time of the commencement of the action the defendant suffered the rain upon the roof of its building to accumulate and run at times in large quantities against the brick wall of plaintiff's building where it soaked through and injured his bake oven and rendered his bakery damp and unfit for use, and delayed and injured his business to his damage $1,000. The defendant, by its answer, denied that it had the control and management of the building. It alleged that on December 20, 1889, Peter Clementson and wife mortgaged to it the property to secure payment of $8,400 and interest; that on February 27, 1891, the interest and $400 of the principal being due and unpaid, Clementson assigned to it all the rents of the building, together with the leases and gave it the right to enter and rent any part which was or might become vacant, and to collect all rents and to retain five per cent.

as compensation and apply the residue (1st) to insure the building, (2nd) to make any necessary repairs, (3rd) to pay taxes and assessments, (4th) to pay the balance upon the interest and the $400 past due. It alleged that its only control of the property was under and by virtue of its mortgage and this contract.

The issues were tried May 1, 1893. The jury found a verdict for plaintiff and assessed his damages at $550. The defendant moved for a new trial; being denied, it appeals.

The Judge on the trial charged the jury that from the time the Lombard Investment Company commenced collecting the rents under the contract given it by Clementson, it went into the possession. It did what amounted to the same thing as though it had taken actual possession as owner, and it was subject from that time to all the liabilities of an owner. It should have used reasonable care not to injure the neighboring building.

*George E. Budd,* for appellant.

Defendant claims that the contract with Clementson did not give, nor did it ever exercise exclusive or absolute control of the Clementson building. It contains an assignment to defendant of the rents of the building, and the right to enter and rent the building in case any part of it became vacant. All the right defendant had in the building was to rent it. Actual occupancy by defendant was not contemplated by the parties. As defendant was not given exclusive control of the property, it is not liable for defects in the premises not created by it. *Kirby* v. *Boylson Market Ass'n,* 14 Gray 249; *Clark* v. *Fry,* 8 Ohio St. 359; *Nash* v. *Minneapolis Mill Co.,* 24 Minn. 501.

The defendant was not a mortgagee in possession for the reason that it did not have the possession under the mortgage, or because of it. *Rogers* v. *Benton,* 39 Minn. 39; *Gray* v. *Nelson,* 77 Ia. 63; *In re Hosley,* 56 Hun 240.

The defendant was an agent or trustee and had no possession or occupation of the premises; for when the premises were rented a tenant had possession, and when they were not rented Clementson had, or was entitled to possession. Under such circumstances the agent or trustee could not be said to have any occupation or possession sufficient to make him liable to third persons, even if he

failed to carry out the duties imposed upon him by the terms of his appointment. Nor would the fact that the mortgagee is the party to whom this agreement runs change their relation in any respect. The defendant never had actual possession. Tenants were at all times in possession. The actual occupant, and not the defendant, is the party liable for the damages. *Clancy* v. *Byrne,* 56 N. Y. 129; *Nash* v. *Minneapolis Mill Co.,* 24 Minn. 501.

*O. Mosness,* for respondent.

The position taken by the defendant, that the contract does not authorize the defendant to remedy the defect complained of is not tenable. It was the defendant's duty to remedy the defect in question, even without any mention thereof in the contract, because it had assumed the control and management of the building. If the nuisance existed on February 27, 1891, when the defendant took possession, it is liable for continuing it from the time that it had either actual or constructive notice of the existence of it. *Lewis* v. *Stein,* 16 Ala. 214; *Crommelin* v. *Coxe,* 30 Ala. 318; *Irwin* v. *Sprigg,* 6 Gill. 200.

GILFILLAN, C. J. The objection made to testimony, or rather the motion to strike out testimony, was on the ground that the defendant could not, under the evidence, be liable for the injury to plaintiff's property. The consideration of the question of defendant's liability will determine the question of the propriety of the testimony.

The defendant's liability depends on whether it had such possession of the premises as to be responsible for the continuance, after notice, of the nuisance created by Clementson, the owner and mortgagor, at the time he constructed the building. In other words, was its relation to the premises such that it is to be deemed a continuer of the nuisance?

As a general rule, the occupier of premises, who has such control of them as to give the right to abate the nuisance, is a continuer of it, if he do not, after notice, abate it. Such is the case with a grantee or tenant of premises on which the grantor or landlord has created a nuisance. Of course, in the case of a tenant, to make him responsible, his occupation and control must extend to that part of the premises in which the nuisance exists. So, if rooms in a

building be rented to different tenants, none of them having possession and control of the roof, the landlord, and not any tenant, would be the continuer of a nuisance in or caused by the roof. In this case, if the defendant had possession and control, it extended to the entire building.

The relation of the defendant to the premises depends on the fact that it was a mortgagee, and on the subsequent contract between it and the mortgagor. That contract was not, as defendant contends, a mere power to rent the premises and collect the rents. So far as it had the effect of a power, it was a power coupled with an interest, for it was intended as further security. Nor did it create the relation of landlord and tenant. It reserved no rent, and created none of the rights and duties existing between landlord and tenant. It assumed to assign and transfer to defendant all rents and profits belonging to the premises, together with all leases, of and agreements, or contracts relating to the premises, and the right to collect all rents due or to become due thereunder; giving the right to enter upon the premises, and to rent the same, or any part thereof, which is now, or which may hereafter become, unoccupied." The defendant covenanted by it to use reasonable diligence and efforts to collect all rents due or to become due, and to rent, so far as it could, any vacant portions of the premises, at reasonable rates, to tenants of good class and character, and, after deducting five per cent. for collecting, to apply the remainder of the rents (1) to keep the building insured; (2) to pay for necessary repairs; (3) to pay taxes and assessments; (4) to paying the interest due or to become due on the mortgage before the termination of the agreement, and $400 of the principal of the mortgage debt due at the date of the contract. The agreement was to terminate whenever the interest and $400 were paid as thus provided, or at any time when the mortgagor should pay the $400 and the interest due, and any money for repairs or insurance paid by defendant, over and above rents collected applicable thereto. There were some minor stipulations in the contract, which, however, did not change in any way its character and effect.

The rights and duties thus specified are not, except in one particular, essentially different from those the law would vest or impose in the case of a mortgagee in possession. The particular in which it differs from an ordinary case of the kind is in the right reserved

to the mortgagor to terminate the possession before the mortgage debt is fully paid. But inasmuch as a mortgagee cannot take possession, so as to have the rights of a mortgagee in possession, without the consent, express or implied, of the mortgagor, there can be no reason why the latter, in expressly consenting, may not limit the duration of the possession.

A mortgagee cannot take possession under his mortgage alone. "The assent, express or implied, of the mortgagor, that the mortgagee may take possession under or because of his mortgage, is of the essence of a mortgagee in possession." *Rogers* v. *Benton,* 39 Minn. 39, (38 N. W. 765.) And when the mortgagee so takes possession, with such consent, he must be a mortgagee in possession. It cannot change the character of his possession that consent to his taking it was given by formal contract, provided the contract was made because of the mortgage, and provided the possession consented to is not, while it is to continue, materially different from that of a mortgagee in possession.

A reading of the contract leaves no room to doubt that, but for the mortgage, it never would have been made, or that the possession it authorized or turned over to defendant was with reference to the mortgage, and because of it. It put the defendant fully in possession of the entire premises; in as complete possession as any landlord can have, who has rented different parts of his building to different tenants. No tenant had possession and control of the roof, and the defendant might therefore be the continuer of a nuisance caused by it. If it were necessary that the contract give defendant authority to abate a nuisance in it, the authority given to keep the building "in such condition as landlords usually keep buildings of the class and character of the building situated on said premises" would be sufficient.

The defendant contends that the evidence furnished no means by which the jury could determine how much of the damage to plaintiff's building was caused before, and how much after, the notice. But the testimony of the plaintiff was that the damage was all done after, and none before, the notice; and, if the jury believed that, they could render a verdict for the whole damage done. It is true that the plaintiff testified his wall and oven had settled before he gave defendant notice. But we suppose the wall of a building may set-

tle without any harm. It will probably depend on how much it settles, and whether the settling cracks the wall, or otherwise tears or injures the building.

Order affirmed.

(Opinion published 57 N. W. Rep. 309.)